NORRIS *v.* RYNO.

1. MORTGAGES—PAYMENT—FORECLOSURE.
   Conflicting testimony, in a suit to enjoin defendant from fore-
   closing a mortgage by advertisement, considered, and *held*, to
   show that complainant was entitled to an additional credit
   for a payment made by him.

2. SAME—TENDER—COSTS.
   Where complainant had negotiated a loan at a bank, and
   offered defendant to pay the sum due on the mortgage, but
   did not have the money or pay it into court, he was not en-
   titled to an allowance for interest or to the costs of the lower
   court.

3. SAME—CROSS-BILL.
   Nor was defendant, who, knowing there was a controversy
   over the amount due, proceeded to foreclose by advertise-
   ment, claiming an excessive amount, entitled to costs on his
   cross-bill for foreclosure.

Appeal from Allegan; Padgham, J. Submitted Janu-
ary 19, 1912. (Docket No. 136.) Decided March 12,
1912.

Bill by John Norris against Clarence A. Ryno, execu-
tor of the estate of Ephraim W. Ryno, deceased, to enjoin
defendant from foreclosing a mortgage by advertisement.
From a decree for defendant, complainant appeals. Modi-
fied and affirmed.

*Smedley, Linsey & Lillie,* for appellant.

*John B. Stockdale* and *Alfred J. Mills,* for appellee.

STEERE, J. This bill of complaint is filed to restrain
foreclosure by advertisement of a mortgage given by
complainant to defendant's father, and to obtain an
accounting as to the amount unpaid thereon. Complain-
ant alleges that certain payments made on said mortgage

169 MICH.—13.

were not credited, and that the sum stated as due in the published notice of foreclosure is excessive. Defendant in his answer denies that any payments which were made were not credited, avers the amount due at the date of the published notice was correctly stated, prays the benefit of a cross-bill by his answer, and asks for an accounting and decree of foreclosure on the amount found due by the court. A replication was filed, and the case heard in the circuit court of Allegan county on January 13, 1910, on pleadings and proofs taken in open court. On April 25, 1911, a decree was rendered dismissing complainant's bill, and granting defendant a decree of foreclosure on his cross-bill, in default of the payment of $1,730.80 within 60 days; that being the amount found by the court to be due and unpaid on the mortgage. From said decree complainant appealed.

It was found by the trial court that the defendant had figured an excessive rate of interest in computing the amount due, and thereby the sum set forth and claimed in his published notice of foreclosure was excessive. The proceeding to foreclose by advertisement was begun on March 20, 1909, and the court found there was then due $1,542.65, and that the complainant had tendered in payment of the mortgage the sum of $1,388.05, which was not a sufficient tender. The court also found that an alleged payment by complainant to defendant's father on May 13, 1903, of $125, was not proven by a preponderance of the evidence.

By their briefs, counsel for the contending parties narrow the issue before us to the one question of whether complainant paid defendant's testate this $125 in part payment of the mortgage. The mortgage in question covered complainant's farm on which he resided, consisting of 120 acres located in Allegan county, about five miles from Wayland, where Ephraim W. Ryno, now deceased, resided. This mortgage was given April 13, 1899, was for $1,200, ran for three years, interest at 6 per cent. It was a renewal, at a lower rate of interest, of a former

mortgage which had existed on the same property between the same parties for about 12 years. Ephraim W. Ryno, deceased, had resided in Wayland for many years, was a man of some means, and at times loaned money. The complainant had resided for many years on his farm, which was covered by this mortgage, devoting himself to farming, and at times increasing his income by digging ditches for his neighbors. He was illiterate and kept no accounts, depending on his memory in business matters, and the integrity of those with whom he dealt. He had been a borrower from the elder Ryno for many years, not only owing him on the mortgage on the farm, but at times borrowing other sums of money and giving notes. The notes were all subsequently paid, except the one given in connection with the mortgage in question. No serious question or trouble ever seems to have arisen between these parties over payments, until the present one, which developed after the elder Ryno became ill, and his son, the defendant, took charge of his business. The defendant and complainant had been in litigation over some ditching which complainant had done for him, and their relations do not seem to have been friendly. The mortgage in question had been allowed to run for years after it fell due, complainant making annual payments which about kept up the interest. The elder Ryno never gave him receipts for payments, but was supposed to indorse them on the paper he held. After the elder Ryno became ill and defendant was in charge of his business, a settlement of the mortgage was demanded by defendant. When the parties came together finally in an endeavor to reach an adjustment, complainant, in going over the accounts with defendant, found, as he claimed, that a payment of $125 which he had previously made was not credited to him. He had an interview with the elder Ryno while he was sick and shortly before he died, but all his testimony in relation to what occurred between them is inadmissible, being equally within the knowledge of the deceased.

Lena Fish, a witness, who was present, testifies that the matter of this $125 payment was discussed between complainant and deceased, complainant insisting that he had made such payment, the deceased, who was quite ill at the time, denying the same, and stating that he did not remember of that amount being paid to him. In conclusion, the witness testified:

"I don't recollect anything more than that he didn't remember that he had ever paid the $125. * * * I didn't listen to any of the conversation because I wasn't interested in it. I was only in the room from time to time."

The testimony was taken in open court. Incompetent as well as competent testimony was introduced and spread upon the record, it being a chancery case, and the court not at liberty to pass upon the evidence as it was given.

Complainant testified in detail as to all the facts and circumstances touching the payment of this $125. Much of this was inadmissible, being equally within the knowledge of the deceased. That which is competent was so intermingled with the incompetent as to confuse and give the impression that all should be rejected. A careful examination, however, of the printed record, shows that there is, running through such record, much competent testimony bearing upon the question of this payment. The evidence shows that this contention was consistently urged before the death of the party to whom it is claimed payment was made. Complainant insisted upon the payment strenuously to the elder Ryno as well as others. He testifies that in the fall of 1908, when the elder Ryno was taken sick, he was requested by defendant to come and settle up this mortgage; that he had a talk with defendant in regard to it about the 1st of November, 1908, in which he claimed this payment of $125 was made, stating to him the time and circumstances; that, with nothing but his memory to go by, he informed defendant of having paid the money to the bank, which issued a certificate of deposit in his father's name on May 13, 1903; that in a dis-

cussion between complainant and defendant and his brother the brother said, "If you gave father a certificate, I should think you could find it;" that he thereupon went to the bank, made inquiry, giving them the date and amount, and ascertained that a certificate for that amount had been issued on the date he claimed. Mr. Pickett, manager of the bank, testifies that some time in the fall of 1908 Mr. Norris came to the bank, and asked him to look up a certificate of deposit:

"He came into the bank, into the back room where I was at work, and asked me if I remembered his getting a certificate of deposit for Mr. Ryno in May, 1903. I think he gave me the exact date. I think it was May 13th, as I remember it, and I says, 'No; I don't remember anything about it at all.' He said the amount was $125. I told him I would look it up and let him know; and I asked Duell, and we hunted up the old Register of 1903, which had been put away, and we found there was a certificate issued to E. N. Ryno for $125 on May 13, 1903. I have it with me."

This certificate was stamped, "Paid May 18, 1903," just five days later. Complainant testifies that this money was obtained from the sale of some cattle. This is verified by the testimony of his wife, who gives the circumstances, stating the approximate date and amount for which the cattle were sold.

We think that complainant's talk with Pickett relative to the certificate of deposit, giving him the date and amount, is competent; that the testimony of Pickett touching the circumstances of how and where he found it is competent; that the testimony of complainant as to conversations with defendant is competent, as also his conversation with defendant's brother; that the testimony of Lena Fish of complainant's talk with the elder Ryno and defendant about the claim of payment is competent; that the testimony of complainant's wife as to the sale of the stock to raise money to make the payment on the mortgage is competent. None of these facts were equally within the knowledge of the deceased. This certificate

was cashed only five days after it was dated. In the usual course of business it would hardly be thought that a party taking out a certificate of deposit which he had himself purchased for himself would turn round and cash it so soon thereafter. If complainant purchased this certificate of deposit to make a payment to the elder Ryno, its being cashed within so short a time would be more consistent. We think this certificate of deposit, offered in evidence, in connection with the competent testimony as to the circumstances surrounding its issue, together with the fact that it was so soon paid to the elder Ryno, made out a *prima facie* case, which it was incumbent upon the defendant to meet, by showing that the money did not come from the complainant. The complainant, when this controversy arose, after stating the circumstances of the payment to the defendant, went directly to the bank, asked the banker if he remembered issuing the certificate, and gave the exact date and exact amount. We think this, in the light of the other undisputed testimony, is convincing evidence of the fact that he did buy the certificate for the elder Ryno on that date, and for the payment claimed. The indorsement thereon is evidence that the money was received. The amount due on this mortgage should be recomputed, giving complainant credit for the $125 paid on May 13, 1903.

It is further contended by complainant that, crediting the $125 on the mortgage as of the date it was paid, his alleged tender of March 20, 1909, was sufficient in amount to then pay the mortgage in full, therefore no subsequent interest should be allowed and the decree should be for only $1,388.05, with costs of both courts in his favor. With this contention we cannot agree. Complainant had negotiated with a bank to loan him money to pay the mortgage; he did not have it himself. Accompanied by the manager of the bank, he offered to pay this amount to the defendant in settlement of the mortgage. It was not accepted and his negotiations for a loan from the bank were not consummated. He never had the money, so far

as shown, had assumed no other obligation for it, and did not keep his alleged tender good by paying it into court. Had his offer been subsequently accepted, he would have been obliged to borrow the money to meet it. Even though it was within his power to borrow and make the offer good he would simply have shifted his indebtedness and paid interest to another. He is no worse off in that particular.

Defendant, in his answer in the nature of a cross-bill, asks for affirmative relief by decree of foreclosure for the amount found due on the mortgage. To this he is entitled. The testimony shows that defendant, knowing there was a controversy over the amount due on the mortgage, instead of taking time to investigate, and, in case of settlement not being reached, foreclosing in chancery, where the matter could be legally investigated and an equitable accounting had, proceeded at once to foreclose by advertisement for the full amount claimed to be due, including not only the items in controversy but also interest on interest after the mortgage fell due. Such being the situation, he is not considered entitled to recover any costs heretofore incurred.

The decree of the court below will be modified in accordance with this opinion, and otherwise affirmed, with costs of this court only in favor of complainant.

MOORE, C. J., and MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.